# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE M. STAMPS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,[1]<br><br>　　　　　　Defendant.<br>_____/ | Case No. 1:23-cv-00255-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　　INTRODUCTION

On February 18, 2023, Plaintiff Anne M. Stamps ("Plaintiff") filed a complaint seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

## II.    BACKGROUND

On September 20, 2019, Plaintiff protectively filed a claim for SSI, alleging she became disabled on May 22, 2012, due to major depression, anxiety attacks, insomnia, memory issues, spine realignment, pinched spinal cord, problems with spinal discs, and asthma. (Administrative Record ("AR") 76, 77, 90, 91, 216, 220, 221, 284, 286.)

**A.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on April 20, 2020, and again on reconsideration on July 27, 2020. (AR 105–109, 113–17.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 118–72.) The ALJ conducted a hearing on June 5, 2018. (AR 37–82.) Plaintiff appeared at the hearing without a representative or an attorney and testified as to her alleged disabling conditions. (AR 59–67.)

A Vocational Expert ("VE") also testified at the hearing. (AR 68–73.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 68.) The VE was also to assume this person is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, can stand and/or walk for approximately six hours in an eight-hour workday; can sit for approximately six hours in an eight-hour workday, with normal breaks; cannot climb ladders, ropes, and scaffolds; can occasionally climbs stairs and ramps, stoop, kneel, crouch, and balance; and should not crawl. (AR 68.) Such person can occasionally reach overhead with the bilateral upper extremities; can frequently handle and finger with the bilateral upper extremities; should have no more than occasional concentrated exposure to atmospheric conditions; and no exposure to moving mechanical parts and high exposed place hazards. (AR 68–69.) Such person is limited to understanding, remembering, and carrying out simple, routine, and repetitive instructions and tasks, and should do "isolated work," which is work that requires no direct public contact, occasional direct co-worker and supervisor interaction, with no group tasks. (AR 69.) Lastly, the person should do "low stress work," which is work that requires only occasional changes in work setting, occasional changes in work duties, and no work on a moving conveyor belt. (AR 69.)

The VE testified that such a person could perform light jobs in the national economy, such as garment sorter, Dictionary of Operational Titles (DOT) code 222.687-014 with a specific vocational

preparation (SVP)[3] of 2; warehouse checker, DOT code 222.587-010 with an SVP of 2; and cleaner (housekeeping), DOT code 323.687-014 with an SVP of 2. (AR 69–70.) The VE testified that, were such person limited to standing and walking for approximately four hours, and sitting for approximately four hours, a person with the above-described limitations could still perform the garment sorter job, which would be eroded from 30,000 to 20,000 jobs in the national economy "on the basis of the need for positional changes." (AR 70.) Such a person could also perform the jobs of injection molding machine tender, DOT code 556.685-038 with an SVP of 2, which would be eroded from 40,000 to 20,000 jobs in the national economy; and office helper, DOT code 239.567-010 with an SVP of 2, and 45,000 jobs in the national economy. (AR 70–72.)

In addition to the above-described limitations, missing one day of work per month would be work preclusive. (AR 72.) The VE further testified that a person who is off task and nonproductive at a rate of ten percent or more than the average worker performing the same job would not be able to sustain competitive employment. (AR 72–73.)

**B.     The ALJ's Decision**

In a decision dated January 21, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 24–39.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 27–39.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since September 20, 2019, the application date (step one). (AR 27.) At step two, the ALJ found Plaintiff's following impairments to be severe: anxiety disorder; major depressive disorder; personality disorder; cervical and lumbar degenerative disc disease status-post discectomy and fusion; amphetamine use disorder; asthma; neuropathy; and chronic pain disorder. (AR 27–28.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 28–31.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See*

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) subject to the following limitations: [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for approximately four hours and sit for approximately four hours, in an eight-hour workday, with normal breaks. [Plaintiff] cannot climb ladders, ropes, and scaffolds and can occasionally climb stairs and ramps. [Plaintiff] can occasionally stoop, crouch, kneel, and balance, as defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT). She cannot crawl. [Plaintiff] can occasionally reach overhead and frequently handle and finger with the bilateral upper extremities. [Plaintiff] should have only occasional, concentrated exposure to atmospheric conditions and no exposure to moving mechanical parts and high, exposed place hazards, as rated by the SCO-DOT. [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive instructions and tasks. [Plaintiff] is limited to isolated work, which involves no direct public contact, occasional direct co-worker and supervisor interaction, and no group tasks. (There is no limit on incidental contact.) [Plaintiff] should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties and no work on a moving conveyor belt.

(AR 20–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the longitudinal treatment record." (AR 32.) The ALJ determined that Plaintiff had no past relevant work (step 4), and was not disabled because, given her RFC, she could perform a significant number of other jobs in the local and national economies, specifically garment sorter, injection molding machine tender, and office helper (step 5). (AR 38–39.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 5, 2023. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

4

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be

5

'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff asserts the ALJ harmfully erred by not following the Commissioner's procedural guidelines, as set forth in its Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-6-74(B), and that substantial evidence does not support the ALJ's step five finding because the jobs identified by the VE are not consistent with Plaintiff's RFC and/or do not exist in significant numbers, as set forth in a memorandum Plaintiff submitted to the Appeals Council. (Doc. 12.) The Court disagrees, and finds that remand is not warranted in this case.

**A.    Lack of Compliance with HALLEX**

HALLEX is the Social Security Administration ("SSA")'s "internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). Plaintiff specifically alleges the ALJ violated HALLEX I-2-6-74(B), which states:

> At the hearing, the ALJ must advise the claimant of the reason for the VE's presence and explain the procedures to be followed . . . . After administering the oath or affirmation, the ALJ must (on the record) . . . [a]sk the claimant and the representative whether they have any objection(s) to the VE testifying.

I-2-6-74. TESTIMONY OF A VOCATIONAL EXPERT, HALLEX I-2-6-74, 1993 WL 751902 (updated June 16, 2016). Plaintiff contends that the ALJ did not ask her at the hearing, at which she was unrepresented, whether she had any objections to the VE testifying as required by HALLEX I-2-6-74(B). (Doc. 12 at 11.)

The ALJ observed in their decision, "Notably, [Plaintiff] did not offer any objections to the [VE's] qualifications when given an opportunity to do so at the hearing." (AR 39.) The record shows, however, that Plaintiff was not given an opportunity to object to the VE's testimony. Upon the

7

conclusion of the VE's testimony, the ALJ asked Plaintiff whether she wanted the ALJ "to ask any questions of the vocational expert on your behalf." (AR 73.) The language of the relevant HALLEX guideline appears to require a more specific solicitation of Plaintiff's objections.

However, while the ALJ did violate HALLEX, "the Ninth Circuit has plainly . . . taken the position that HALLEX does not . . . create judicially enforceable duties" upon ALJs or courts. *Lehman v. Saul*, No. 3:20-CV-0184-HRH, 2021 WL 1232670, at *10 (D. Alaska Apr. 1, 2021). *See also Ronquillo v. Saul*, No. 1:19-CV-1665 JLT, 2021 WL 614637, at *4 (E.D. Cal. Feb. 17, 2021) ("[T]he Ninth Circuit determined failure to comply with HALLEX standards is not a reversible error because 'HALLEX is strictly an internal guidance tool.'") (quoting *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000)). The ALJ's failure to comply with HALLEX is therefore not a reversible error.[4]

**B.    Conflict with RFC**

Plaintiff next contends that ALJ's finding that Plaintiff could perform jobs as an injection molding machine tender (DOT code 556.685-038) or an office helper (DOT code 239.567-010) conflicts with her RFC. (Doc. 12 at 16.) The Court takes each argument in turn.

1.    <u>Injection Molding Machine Tender</u>

Plaintiff asserts that the job of injection molding machine tender "necessarily involves working with moving machinery," which is "in direct conflict with the ALJ's RFC determination that [Plaintiff] is only capable of jobs that have 'no exposure to moving mechanical parts[.]'" (*Id.*)

Plaintiff relies on the DOT's job description (*see id.*), but it directly contradicts her argument. The DOT, which is "the best source for how a job is generally performed," *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001), provides that the job of injection molding machine tender requires <u>no</u> exposure to moving mechanical parts. *See* 556.685-038, INJECTION-MOLDING-MACHINE TENDER,

---

[4] Even if the court were to find the HALLEX judicially enforceable, Plaintiff has not established that the ALJ's failure to follow it was prejudicial to warrant remand in this case. "Reversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Id*. Here, Plaintiff presented her arguments regarding the VE's testimony to both the Appeals Council and this Court, each of which has considered the arguments and found them unavailing for the reasons stated herein. *See, e.g., Mangune v. Berryhill*, No. 5:16-CV-00632 (VEB), 2017 WL 3160562, at *5 (C.D. Cal. July 25, 2017) (finding, despite ALJ's "apparent disregard for HALLEX" requirement to proffer consultative examiner's report prior to hearing, no prejudice where the claimant had the opportunity, and did, raise arguments directed to the report to the Appeals Council and the district court).

DICOT 556.685-038, 1991 WL 683482 ("Moving Mech. Parts: Not Present - Activity or condition does not exist").  This is consistent with Plaintiff's RFC.  (*See* AR 31 ("Plaintiff should have . . . no exposure to moving mechanical parts . . . .").)  There is therefore no conflict between the injection molding machine tender job and Plaintiff's RFC.

### 2. Office Helper

Plaintiff asserts that she also cannot perform the duties of office helper because the DOT description for that occupation "involves helping people in an office," which conflicts with her RFC limitation to "isolated work." (Doc. 12 at 18.)  Plaintiff adds that the job exceeds Plaintiff's mental limitation to "simple, routine, and repetitive instructions and tasks" because "[i]n the modern world, office work involves working with computers, software, and office machines."  (*Id*. at 18–19.)

Plaintiff's RFC permits occasional interaction with coworkers and supervisors.  (*See* AR 31.) Nothing about the DOT listing suggests that greater interaction is necessarily part of the job.  In fact, the DOT describes the "Speaking-Signaling" component of the job as "Not Significant."  *See* 239.567-010, OFFICE HELPER, DICOT 239.567-010, 1991 WL 672232.  Moreover, several courts in this Circuit have expressly rejected Plaintiff's argument.  *See, e.g., Robinson v. Comm'r of Soc. Sec. Admin.,* No. CV-22-00070-PHX-DGC, 2022 WL 9833906, at *9 (D. Ariz. Oct. 17, 2022) (rejecting the plaintiff's contention "that the plain language of the office helper position exceeds her RFC limitation of interacting with coworkers occasionally (one-third of the time)," noting that the position requires only sporadic interaction with others)*; Troy H. v. Berryhill*, 2019 WL 2413020, at *2 (C.D. Cal. June 7, 2019) (finding "no actual or apparent conflict" between office helper job and claimant's limitation to incidental contact with coworkers); *Perez v. Berryhill*, 2018 WL 3636883, at *4 (C.D. Cal. July 29, 2018) (finding no "apparent conflict" between office helper job and claimant's limitation to incidental contact with the public and with coworkers).  *See also Hayes v. Colvin*, No. 3:13-CV-01506-MC, 2014 WL 7405647, at *8 (D. Or. Dec. 30, 2014) ("As defined in DOT § 239.567-010 . . . . the need for speaking and signaling in an office helper position is not significant.").

Plaintiff's contention that the requirements of the office helper job, with an SVP and Reasoning Level of 2 per the DOT[5], are inconsistent with her limitation to "simple, routine, and

---

[5] *See* 239.567-010, OFFICE HELPER, DICOT 239.567-010, 1991 WL 672232.

repetitive instructions and tasks" has also been repeatedly rejected by this Circuit's district courts, including this one. *See, e.g., Alacar v. Comm'r of Soc. Sec.,* No. 2:22-CV-149-TLN-KJN, 2022 WL 17418356, at *9 (E.D. Cal. Dec. 5, 2022) ("Office Helper is classified as a Specific Vocational Preparation Level 2, which corresponds with simple, non-complex, routine work."); *Lyn B. v. Comm'r of Soc. Sec.,* No. 5:18-CV-00298-AFM, 2019 WL 1491174, at *8 (C.D. Cal. Apr. 3, 2019) ("limitation to simple, routine, and repetitive tasks" did not conflict with office helper job's requirement of "performing a variety of duties"); *Jerome M. H. v. Berryhill*, No. CV 17-7423-FFM, 2019 WL 994966, at *2 (C.D. Cal. Feb. 7, 2019) (finding office helper position compatible with limitation to simple repetitive tasks and noting plaintiff had "failed to demonstrate why a person limited to simple repetitive tasks could not also frequently change tasks"); *Lewis v. Colvin*, No. 1:14-CV-1654-SMS, 2016 WL 397626, at *5 (E.D. Cal. Feb. 2, 2016) (finding no conflict between plaintiff's limitation to simple instructions or simple, repetitive tasks and performing a variety of job duties as an office helper); *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1136 n.10 (C.D. Cal. 2009) (office helper job with Reasoning Level 2 consistent with a limitation to simple, repetitive tasks). Plaintiff has therefore failed to show a conflict between her RFC and the office helper job.[6]

**C.   Evidence Regarding Jobs in the National Economy**

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [their] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); see 20 C.F.R. § 416.960(c)(2). "Whether there are a significant number of jobs a claimant is able to perform with [their] limitations is a question of fact to be determined by a judicial officer." *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).

As described above, the VE testified an individual with Plaintiff's limitations would be able to perform at least three jobs: garment sorter, with approximately 30,000 jobs in the national economy; injection molding machine tender, with approximately 40,000 jobs in the national

---

[6] Even were the Court to find a conflict, such error would be harmless because the ALJ relied upon two additional occupations identified by the VE: garment sorter and, as discussed above, injection molding machine tender. Because the ALJ determined that Phillips's RFC permits her to perform at least one job that exists in significant numbers in the national economy, the ALJ did not err at step five. *See Phillips v. Kijakazi*, No. 20-17178, 2021 WL 5506341, at *2 (9th Cir. Nov. 24, 2021) (finding harmless error where the ALJ properly identified at least one job that was consistent with Plaintiff's RFC).

economy; and office helper, with approximately 45,000 jobs in the national economy. (AR 70–72.) The VE reduced the garment sorter and injection molding machine tender jobs each to 20,000 "to account for the reduced standing, walking, and sitting limitations." (AR 70.)  Relying on the VE's testimony, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff could perform. (AR 38–39.)

After the ALJ issued the decision, Plaintiff submitted a "memorandum" to the Appeals Council attaching 37 pages of printouts, comprised, according to the memorandum, of "screenshots" from "SkillTRAN's Job Brower Pro" and webpages from "the BLS Occupational Requirements Survey" and the "O*Net," that purportedly contain contrary job-number estimates. (AR 315–53.) The Appeals Council exhibited Plaintiff's memorandum and attached printouts as part of the record; however, the Appeals Council found Plaintiff's evidence did not provide a basis for changing the ALJ's decision. (AR 1, 5–6.)

Plaintiff contends the Commissioner failed to resolve the conflict raised by Plaintiff's rebuttal job numbers. (Doc. 12 at 19–20.) An ALJ's duty to resolve a conflict between inconsistent evidence arises "only where the purportedly inconsistent evidence is both significant and probative, as opposed to 'meritless or immaterial.'" *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193–94 (9th Cir. 2022)). Here, the recent decision in *Wischmann* is controlling, as the facts of *Wischmann* are strikingly similar to the facts presented here.

In *Wischmann*, the claimant's attorney submitted a letter to the Appeals Council that "using Job Browser Pro" said the available job numbers were significantly lower than what the VE had testified to at the hearing. *Id*. The Ninth Circuit found that "[t]he letter by [the claimant's] counsel and the six pages of printouts together provide no basis to conclude that these results qualified as significant probative evidence." *Id*. at 506. The court proceeded to explain that the "letter does not show that the data enclosed were produced using the same methodology as that used by the VE." *Id*. at 506–07. The software is meant only to "assist a VE in performing a complex matching exercise of various sources of information from official and private sources," and it does not create the data itself. *Id*. at 507. The Ninth Circuit also noted that the letter did not state "which version of the program was used, so we do not know whether the information used by the program was current or

out of date." *Id*. Finally, the court noted that the raw data of these pages are "not comprehensible to a lay person, and [the claimant's attorney] does not provide the interpretation necessary to make the pages meaningful." *Id*. Therefore, the Ninth Circuit concluded that "because the letter and attachments are not probative evidence, they do not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve. Therefore, there is no need to remand." *Id*. (citation omitted).

Here, as in *Wischmann*, the evidence submitted by Plaintiff to the Appeals Council was not sufficiently "probative" to trigger a duty of reconciliation. Plaintiff attached to his memorandum screenshots from Job Browser Pro, three O*NET Online webpages (one for each job the VE identified), and results from the BLS Occupational Research Survey ("ORS").[7] (*See* AR 317–53.) Although this evidence contained numerous values and data, Plaintiff's counsel made no effort to explain it in his memorandum. He does not identify what queries were run, what variables were changed, or what filters were applied to the data. *See Wischmann*, 68 F.4th at 507. Instead, Plaintiff's counsel claims in his memorandum that the evidence "demonstrate[s] . . . that these occupations account for far fewer jobs than the VE testified to." (AR 316.) This bare assertion is "insufficient to contradict the VE's calculations in a manner that would require a more searching inquiry by the ALJ."[8] *Caley v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01735-PHX-DWL, 2023 WL 6632990, at *8 (D. Ariz. Oct. 12, 2023) (citing *Lloyd v. Kijakazi*, No. 22-35684, 2023 WL 4044415, at *1 (9th Cir. June 16, 2023)). *See Wischmann*, 68 F.4th at 505 (Job Browser Pro is "raw data" that is "not comprehensible to a lay person" and requires some "interpretation necessary to make the pages

---

[7] The O*NET Online webpages have information about each job's requirements, while the ORS printouts provide "job-related information regarding physical demands; environmental conditions; education, training, and experience; as well as cognitive and mental requirements." (AR 317–53.) The ORS printouts state that the data collection is funded by the SSA as part of its effort to develop a new system to replace the DOT. (AR 317–53.)

[8] To be sure, Plaintiff has submitted an explanation to this Court that provides some context to his competing job numbers data. (*See* Doc. 12 at 13–18.) This explanation was not provided to the ALJ or Appeals Council, so it is unclear if it is even properly before this Court on appeal. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (explaining that all evidence and issues must be raised before the ALJ and Appeals Council to be preserved for appeal). That said, even were the Court to consider Plaintiff's explanation, it is not responsive to the flaws outlined herein—indeed, Plaintiff does not address the *Wischmann* factors in her briefing. Plaintiff's explanation does not, for example, shed light on counsel's expertise in using Job Browser Pro or how he used the program to arrive at his competing job numbers data. And the data, even with additional context, does not call into question the VE's methodology, which he testified was based not on the Job Browser Pro, but rather his "experience and from resources developed by professionals in [the] industry." (AR 73.) Accordingly, the Court is not persuaded by Plaintiff's explanation provided for the first time to this Court.

meaningful to a court."); *cf. Caley*, 2023 WL 6632990, at *8 ("[A]ttorney argument does not constitute the sort of probative, contradictory evidence that would compel the ALJ to resolve the alleged conflict.") (citing *Kilpatrick*, 35 F.4th at 1194).

Even if he had provided an explanation of the evidence, Plaintiff's counsel has not shown that he possesses the same level of expertise in interpreting the number and type of jobs available in national economy as the VE, such that the Court might find counsel's submission meaningful to Plaintiff's argument. In short, Plaintiff has failed to show the memorandum submitted to the Appeals Council qualifies as probative evidence that would warrant a remand.[9] *See Wischmann*, 68 F.4th at 507. Accordingly, the Court finds that the materials "do not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve," *id*., and the ALJ did not err at step five by relying on the VE's testimony, *see Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020) ("Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding.").

### V.   CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **January 31, 2024**                    /s/ *Sheila K. Oberto*
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[9] Relying on *Wischmann*, other district courts in this Circuit have similarly held. *See, e.g., Candy G. v. Comm'r, Soc. Sec. Admin.,* No. 3:23-CV-0007-MC, 2023 WL 8433169, at *7 (D. Or. Dec. 5, 2023); *Caley*, 2023 WL 6632990, at *8; *Karol B. v. Acting Comm'r of Soc. Sec*., No. 2:22-CV-01593-TLF, 2023 WL 5509071, at *4 (W.D. Wash. Aug. 25, 2023); *Harold C. S. v. Kijakazi*, No. 1:22-CV-00334-REP, 2023 WL 3819383, at *5 (D. Idaho June 2, 2023).